UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NORTHSTAR REGIONAL P.S.C.,

    Plaintiff,

v.                                                   Case No: 8:23-cv-02636-KKM-NHA

INSYNC HEALTHCARE
SOLUTIONS, LLC, et al.,

    Defendants.
_____

## ORDER

NorthStar Regional P.S.C. sues InSync Healthcare Solutions, LLC, Qualifacts Systems, LLC, and QF Holdings, Inc. for breach of contract, fraud in the inducement, unjust enrichment, and negligent misrepresentation. Compl. (Doc. 1) ¶¶ 34–59. The defendants jointly move to dismiss the complaint. Mot. to Dismiss (MTD) (Doc. 22).

I.    BACKGROUND

NorthStar, a Nevada corporation, offers behavioral health services, including "residential treatment," "co-occurring disorders intensive outpatient program[s]" both with and without lodging, "mental health counseling services, chemical dependency treatment and sober housing for men and women." Compl. ¶¶ 5, 10. The Minnesota Department of

Human Services ("DHS"), which regulates entities such as NorthStar, requires NorthStar to "utilize custom taxonomy codes for Medicaid billing." Compl. ¶ 12.

Since 2015, NorthStar has used the software system Procentive for storage of both medical and practice management records and billing services. Compl. ¶ 13. But about September 2021, NorthStar solicited the defendants (NorthStar probably contacted InSync, given NorthStar's allegation that InSync was acquired in about December 2022)[1] to inquire about the possibility of switching from NorthStar's records system to a "one-stop shop" system. Compl. ¶¶ 9, 14. NorthStar hoped, as all businesses hope when contemplating a major change in operation, that the switch would increase efficiency, improve recordkeeping, and reduce costs. Compl. ¶ 14.

NorthStar "shared . . . a list of requirements that [the proposed] software would need to fulfill to satisfy [NorthStar's] requirements." Compl. ¶ 15. The defendants (the speaker is unnamed) allegedly responded by "confirming that [the new system] utilized an Application Programming Interface ("API") that would interact with the State of Minnesota sufficiently for billing" and "representing [that the defendants] had the ability to use their API to directly communicate with and integrate into the billing system of the State of Minnesota on behalf of [NorthStar]." Compl. ¶ 15. The defendants allegedly

---

[1] NorthStar alleges that one or more of Qualifacts Systems, LLC and QF Holdings, Inc. "acquired, merged with or otherwise became the owner" of InSync. Compl. ¶ 9. The defendants state that this acquisition occurred in December 2021 rather than December 2022. MTD at 2.

presented to NorthStar elements of their system—such as a fully integrated patient portal—that "help providers increase efficiency with workflows configured to the needs" of their practice. Compl. ¶ 16. And the defendants created a sixteen-minute video that showcased the system's operation in NorthStar's business. Compl. ¶ 17. This video left NorthStar with the belief that the defendants "had a robust software tool" that could serve NorthStar. Compl. ¶ 17.

The complaint remains silent on which defendant(s) promised that the new system allowed for "seamless billing functionality" with Minnesota and the DHS. Compl. ¶¶ 17–20, 22. The defendants allegedly informed NorthStar that their system included "already created" forms that complied with the DHS's requirements for submitting information. Compl. ¶¶ 19–20. Other alleged representations included that the system navigated easily; allowed for easy communication with patients; provided certain helpful billing and financing tools; and tracked lab results, prescribers, and medications. Compl. ¶¶ 19, 23.

Allegedly, based on these representations, NorthStar on November 17, 2021, contracted with the defendants for software licensing and related electronic medical records and practice management records services. Compl. ¶ 25. NorthStar, allegedly at the defendants' encouragement, agreed to finance portions of the contract and entered into a sixty-six-month loan agreement with GCG Capital, LLC, for the purchase of 118 software licenses from the defendants. Compl. ¶ 25.

As evidence of the agreement with the defendants, NorthStar attached to the complaint a Term Sheet, in which this clause appears twice:

> Please Note: By signing this document you are confirming that you are authorized to make commitments on behalf of the medical practice and affirm acceptance of the software "as-is", that the signor had satisfied themselves the software is suited for their intended purpose.

(Doc. 1-2) at 6, 9. One of these as-is clauses states that, "[i]f there any exceptions," they "must be listed in the above comment section." (Doc. 1-2) at 6. No comments are listed. *See* (Doc. 1-2) at 6.

The Term Sheet incorporates other documents, including InSync's Terms and Conditions. (Doc. 1-2) at 3. NorthStar alleges that the defendants have refused to provide the Terms and Conditions available on November 17, 2021, when the contract was signed. Compl. ¶ 25. Therefore, NorthStar attached the Terms and Conditions that appeared on the defendants' website when the complaint was filed. Compl. ¶ 25; (Doc. 1-4). Provision 14.2 of the Terms and Conditions, included in a section entitled "Warranties," provides:

> 14.2 INSYNC HCS further warrants that in the event of an error or omission caused directly by INSYNC HCS, INSYNC HCS will use reasonable efforts to attempt to timely correct the error or omission. The Practice shall use its reasonable efforts to timely report errors or omissions to INSYNC HCS Support.

(Doc. 1-4) at 11.

NorthStar alleges that, in later communications and meetings between NorthStar and the defendants, the system's noncompliance with the defendants' precontractual

4

representations "became clear." Compl. ¶ 27. After two months of almost daily meetings, the defendants still failed, NorthStar alleges, to assist in successfully operating the system. Compl. ¶ 28. Further, NorthStar says, the system "was unusable for electronic billing" in Minnesota. Compl. ¶ 29. NorthStar alleges that during a December 9, 2022 meeting, the defendants informed NorthStar that the system could not generate the bills necessary for upload to the DHS's electronic billing system and admitted that the defendants were "unable to fulfill [their] contractual obligations to get the System ready to Go Live" for NorthStar. Compl. ¶ 30.

On January 6, 2023, NorthStar notified the defendants of alleged contract breaches, which included breaches of InSync's warranties and the failure to provide the promised "electronic billing system." Compl. ¶ 31; (Doc. 1-5.) When the defendants failed to cure these alleged breaches, NorthStar on April 4, 2023, sent a letter to the defendants terminating the contract for cause. Compl. ¶ 33; (Doc. 1-6.)

After an unsuccessful mediation, NorthStar sued the defendants (Doc. 1), who jointly move to dismiss for the failure to state a claim. (Doc. 22.)

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not

5

require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678. (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When considering the motion, the complaint's factual allegations are accepted "as true" and construed "in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Consideration is limited "to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. at 544.

B. Rule 9(b)

Federal Rule of Civil Procedure 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy Rule 9(b), the complaint must include "(1) precisely what statements were made in what documents . . . or what omissions were made; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) each statement; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud." *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1159 (11th Cir. 2019) (omission in the original) (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)).

III. ANALYSIS

A. Count I: Breach of Contract

To establish a claim for breach of contract, a plaintiff must establish "(1) a valid contract; (2) a material breach; and (3) damages." *Murciano v. Garcia*, 958 So. 2d 423, 423 (Fla. 3d DCA 2007). Defendant QF Holdings based on the first element moves to dismiss Count I. MTD at 7. All three defendants based on the second element move to dismiss Count I, and argue that Count I, as well as the rest of the complaint, constitutes a shotgun pleading. MTD at 5–6, 8–10.

QF Holdings argues for dismissal of Count I because QF Holdings is not a party to the contract. MTD at 7. QF Holdings is correct that a non-party is typically not liable for breach of contract under Florida law, but NorthStar alleges the existence of a contractual relation with all three defendants. Compl. ¶ 35. Although a Term Sheet attached to the complaint includes mention of only InSync and NorthStar, *see* (Doc. 1-2), NorthStar alleges that "one or more of the entities comprising or related to" QF Holdings and Qualifacts "acquired, merged with or otherwise became the owner" of InSync. Compl. ¶ 9. And QF Holdings, along with the other defendants, does not dispute this. In the joint motion to dismiss, the defendants state that QF Holdings purchased "the vast majority of InSync's assets" in December 2021. MTD at 2. QF Holdings proceeds to argue, however, that QF Holdings "assigned all InSync contracts" to Qualifacts. MTD at 2, 7. In other words, to make the non-party argument, QF Holdings introduces new facts that appear nowhere in NorthStar's "well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta*, 358 F.3d at 845; *see Mears v. Mason*, No. 16-81983-Civ, 2017 WL 1327882, at *3 (S.D. Fla. Apr. 10, 2017) ("At the motion to dismiss stage, a defendant 'cannot introduce new allegations or new facts' to rebut a plaintiff's pleadings." (quoting *Battlefield Builders, Inc. v. Swango*, 743 F.2d 1060, 1063 (4th Cir. 1984))).

Therefore, although the alleged assignment of InSync's contracts may prevent

NorthStar's successfully pursuing the breach of contract claim against QF Holdings, the alleged assignment will not result in the dismissal of Count I against QF Holdings.

Next, all three defendants based on an "as-is" clause in the Term Sheet move to dismiss Count I. MTD at 8–10. The "as-is" clause states that the signor, in this instance NorthStar, "affirm[s] acceptance of the software 'as-is' " and is satisfied that "the software is suited for the[] intended purpose." (Doc. 1-2) at 6. The defendants rely on *International Star Registry of Illinois v. Omnipoint Marketing, LLC*, in which a breach of contract claim was dismissed because the plaintiff agreed to accept the subject of the contract "as is." 510 F. Supp. 2d 1015, 1024 (S.D. Fla. 2007).

NorthStar responds that this contract is different because of a warranty provision found in the Terms and Conditions. Resp. to Mot. to Dismiss (Resp.) (Doc. 24) at 7–8; *see* (Doc. 1-4) at 11. Although the contract in *International Star Registry* included "no warranties" of "any kind," 510 F. Supp. 2d at 1024, InSync "warrant[ed] that in the event of an error or omission caused directly by [InSync], [InSync] [would] use reasonable efforts to attempt to timely correct the error or omission." (Doc. 1-4) at 11. And NorthStar alleges in the complaint that the defendants breached the express warranties in the contract. Compl. ¶ 37. The presence of this warranty is enough for Count I to escape dismissal.

The defendants finally argue that Count I (along with the rest of the complaint) constitutes a shotgun pleading because NorthStar's allegations fail "to identify which

9

Defendant is responsible for each alleged claim." MTD at 6. But NorthStar alleges that all three defendants breached the contract. Compl. ¶ 37. Because the claims and defendants are fairly identified and distinguishable, Count I is not a shotgun pleading.

### B. Counts II & IV: Fraud in the Inducement and Negligent Misrepresentation

The defendants address Counts 2 and 4 together in their motion to dismiss. *See* MTD at 10–17. To state a claim for fraud in the inducement, a plaintiff must allege that the defendant (1) "misrepresented a material fact"; (2) "knew or should have known of the falsity of the statement"; (3) "intended that the misrepresentation would induce [the plaintiff] to rely and act on it"; and (4) "that [the plaintiff] suffered injury in justifiable reliance on the misrepresentation." *Witt v. La Gorce Country Club, Inc.*, 35 So. 3d 1033, 1039–40 (Fla. 3d DCA 2010). And to state a claim for negligent misrepresentation, a plaintiff must allege that:

> (1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely . . . on the misrepresentation; and (4) injury resulted in the plaintiff acting in justifiable reliance upon the misrepresentation.

*LoanFlight Lending, LLC v. Wood*, 388 So. 3d 1027, 1031 (Fla. 3d DCA 2024) (omission in the original) (quoting *Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 653 (Fla. 3d DCA 2006)).

The defendants argue for dismissal of Counts II and IV for at least four reasons.

10

MTD at 5–8, 10–17. One reason is that NorthStar's complaint violates Rule 9(b)'s particularity standard, which applies to both fraud in the inducement and negligent misrepresentation. *See Oginsky v. Paragon Props. of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1368 (S.D. Fla. 2011) ("Claims for fraudulent inducement in federal court are governed by Rule 9(b)."); *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 951 (11th Cir. 2014) (explaining that Rule 9(b)'s heightened pleading standard applies to negligent misrepresentation claims). Because the defendants are correct in this contention, Counts II and IV are dismissed without prejudice.

Under Rule 9(b), a plaintiff must plead "the who, what, when, where, and how of the allegedly false statements." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008). NorthStar failed to offer this level of specificity in the complaint. At the very least, NorthStar failed to allege the "who." Although NorthStar alleges that the defendants made many false representations about the system, *see* Compl. ¶¶ 14–24, NorthStar fails to identify the statements attributable to each defendant. A plaintiff in NorthStar's position must "reasonably notify the defendants of their purported role in the scheme," *Drilling Consultants, Inc. v. First Montauk Sec. Corp.*, 806 F. Supp. 2d 1228, 1234 (M.D. Fla. 2011) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir.1997)), in a complaint that includes "specific allegations with respect to the separate [d]efendants," *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1234 (S.D. Fla. 2017)

(quoting *Brooks*, 116 F.3d at 1381). Without these specific allegations, the defendants are in the dark about the "precise misconduct with which they are charged." *U.S. ex rel. Clausen v. Lab'y Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (quoting *Ziemba*, 256 F.3d at 1202).

Counts II and IV violate Rule 9(b)'s particularity requirement and are dismissed.

### C. Count III: Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must allege that (1) the "plaintiff has conferred a benefit on the defendant, who has knowledge thereof"; (2) the "defendant voluntarily accept[ed] and retain[ed] the benefit conferred"; and (3) "the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *CFLB P'ship, LLC v. Diamond Blue Int'l, Inc.*, 352 So. 3d 357, 359 (Fla. 3d DCA 2022) (quoting *Peoples Nat'l Bank of Com. v. First Union Nat'l Bank of Fla., N.A.*, 667 So. 2d 876, 879 (Fla. 3d DCA 1996)). All three defendants argue for dismissal of Count III and claim that no dispute exists as to the validity of the contract. MTD at 17–18. Also, the defendants argue that NorthStar's unjust enrichment claim fails because NorthStar received the software. MTD at 18–19. And QF Holdings argues that in Count III NorthStar failed to allege any direct benefit conferred on QF Holdings. MTD at 8.

The defendants' first argument is correct with respect to InSync and Qualifacts

because NorthStar alleges, and the defendants in response concede, a valid contract between NorthStar, InSync, and, by assignment, Qualifacts. Compl. ¶¶ 25, 35; MTD at 2, 7, 18. The defendants' concession means that Count III is dismissed with respect to both InSync and Qualifacts. A plaintiff "cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008); *see Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1309 (S.D. Fla. 2009) ("[W]here there is an express contract between the parties, claims arising out of that contractual relationship will not support a claim for unjust enrichment.").

Further, although a party may "advance claims in the alternative," *Longo v. Campus Advantage, Inc.*, 588 F. Supp. 3d 1286, 1298 (M.D. Fla. 2022), NorthStar failed to do so here. Compl. ¶¶ 46–52. And even though NorthStar now requests the opportunity to amend the complaint to plead Count III in the alternative to Count I, *see* Resp. at 17 n.10, alternative pleading is typically limited to circumstances "where one of the parties asserts that the contract governing the dispute is invalid." *Degutis v. Fin. Freedom, LLC*, 978 F. Supp. 2d 1243, 1265 (M.D. Fla. 2013). Given the parties' agreement as to the validity of the contract at issue, alternative pleading cannot save Count III as to InSync and Qualifacts.

NorthStar responds that, if the defendants are liable of fraudulent inducement, the

13

remedy of rescission would cause any tension between Counts I and III to disappear. Resp. at 17 n.10. However, NorthStar does not allege in the fraudulent inducement count that the contract is invalid. Compl. ¶¶ 41–45. And, in any case, the fraudulent inducement claim has been dismissed. Therefore, neither of NorthStar's rejoinders supply a basis for denying the defendants' motion to dismiss. *Cf. Longo*, 588 F. Supp. 3d at 1298.

The defendants have not conceded that QF Holdings is a party to the contract. *See* MTD at 7 (describing QF Holdings as a "non-party"). Therefore, the existence of the contract does not impede Count III with respect to QF Holdings. But NorthStar must allege that a direct benefit was conferred on QF Holdings. *See Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017) ("[T]o prevail on an unjust enrichment claim, the plaintiff must directly confer a benefit to the defendant."). And that allegation is missing. NorthStar fails to allege a direct payment to QF Holdings. Instead, NorthStar alleges, in conclusory fashion, that "Plaintiff conferred a benefit on Defendants by entering into the Contract, its related agreements, and the Financing Agreement," and that the defendants "receiv[ed] certain funds related to the" software system. Compl. ¶¶ 47–48. Despite the allegedly "limited information available to" NorthStar, Resp. at 17, these conclusory allegations insufficiently state an unjust enrichment claim as to QF Holdings. Therefore, Count III is dismissed with respect to QF Holdings.

## IV. CONCLUSION

1. The defendants' Joint Motion to Dismiss the Complaint (Doc. 22) is **GRANTED** in part and **DENIED** in part.

2. Counts II, III, and IV are **DISMISSED WITHOUT PREJUDICE**.

3. NorthStar may file an amended complaint no later than October 14, 2024.

**ORDERED** in Tampa, Florida, on September 30, 2024.

*/s/ Steven D. Merryday*
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE[*]

---

[*] Signed by Judge Steven D. Merryday to expedite the resolution of this motion. This case remains assigned to Judge Kathryn Kimball Mizelle.

15