UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


NORTHSTAR REGIONAL P.S.C.,

     Plaintiff,

v.                      Case No. 8:23-cv-02636-KKM-NHA

INSYNC HEALTHCARE
SOLUTIONS, LLC, et al.,

     Defendants.
_____

## ORDER

Defendants InSync Health Solutions, Qualifacts Systems, LLC, and QF Holdings, Inc., move to dismiss NorthStar Regional's second amended complaint for the failure to state claims. MTD I (Doc. 60); MTD II (Doc. 61). For the reasons below, I deny the motions.

## I.   BACKGROUND

Plaintiff NorthStar "is a behavioral health organization [in Minnesota] dedicated to helping people with mental health and substance use disorders." Second Am. Compl. (Doc. 53) ¶ 10. To bill claims, the Minnesota Department of Human

Services (DHS) "requires providers to electronically submit bills with custom taxonomy codes and, for certain treatments, to electronically submit information through" the Drug and Alcohol Abuse Normative Evaluation System (DAANES). *Id.* ¶ 12.

NorthStar uses a combined system named Procentive to store its electronic medical records (EMR) and practice management records (PM) and for its billing services. *Id.* ¶ 13. In September 2021, Jonathan Holt, NorthStar's Marketing Director, began discussions with Bradford Flake, Defendant InSync's Business Development Representative, about converting NorthStar's system from Procentive to InSync's system. *Id.* ¶ 14. Over the course of subsequent discussions and presentations, InSync employees represented to NorthStar that their system would meet NorthStar's stated needs and allow for a more efficient billing process, among other things. *Id.* ¶¶ 14–24. From these interactions, NorthStar understood that InSync's system allowed NorthStar "to seamlessly electronically submit claims and required supporting information to the State of Minnesota." *Id.* ¶ 18. Indeed, InSync's representatives informed NorthStar "that [their system] was suitable for [NorthStar], and medical professionals in Minnesota like [NorthStar], including having already created forms that complied with Minnesota's requirements for

electronically submitted claims, which includes the use of custom taxonomy codes, and existing [Application Programming Interfaces] that allowed the System to directly communicate with and integrate into DHS's billing system and DAANES, which is required to electronically submit claims to DHS." *Id.* ¶ 22.

Based on these representations, NorthStar contracted with InSync. *Id.* ¶ 26; *see* Term Sheet (Doc. 53-1). The parties' agreement was subject to NorthStar's acceptance of InSync's terms and conditions. Second Am. Compl. ¶ 28; *see* Terms and Conditions (Doc. 53-2).[1] Under the Terms and Conditions, InSync warranted "that in the event of an error or omission caused directly by [InSync], [InSync] will use reasonable efforts to attempt to timely correct the error or omission." Second Am. Compl. ¶ 31; Terms and Conditions § 14.2.

In December 2021, InSync was acquired by, or merged with, QF Holdings. *See* Second Am. Compl. ¶ 9. QF Holdings then merged certain parts of InSync with Qualifacts. *Id.* As a result, during communications in December 2021 about the implementation of InSync's system, InSync's employees "began to identify

---

[1] NorthStar attaches to its second amended complaint a copy available online of the Terms and Conditions but does not agree that this specific version of the Terms and Conditions governs. Second Am. Compl. ¶ 29 n.1.

themselves as being associated with" Defendant Qualifacts and new representatives of Qualifacts became involved. *Id.* ¶ 33.

Over the course of the next months, NorthStar learned that the system would not function as promised. *Id.* ¶¶ 34–37. The system was "unusable for electronically billing the services [NorthStar] provides in the Minnesota market" and InSync and Qualifacts could not remedy the issue. *Id.* ¶ 36. In a December 9, 2022 meeting, Qualifacts "admitted in front of multiple witnesses from both [NorthStar] and [Qualifacts] that the [system] could not be made ready to Go Live for [NorthStar] or electronically submit bills with [NorthStar's] custom taxonomy codes." *Id.* ¶ 37.

As a result, in January 2023, NorthStar provided Qualifacts with a notice of multiple breaches of the contract. *Id.* ¶ 38; *see* (Doc. 53-4) at 2–3. Because Qualifacts did not cure the noticed breaches within thirty days, NorthStar terminated the contract in April 2023. Second Am. Compl. ¶ 40.

NorthStar initiated this action, and the defendants moved to dismiss the initial complaint. (Doc. 22). After an order granted in part and denied in part the defendants' motion, Order on MTD (Doc. 42), NorthStar twice amended its complaint, (Docs. 45, 53). In the second amended complaint, NorthStar brings a breach of contract claim against InSync and Qualifacts, a fraud in the inducement

claim against all defendants, a breach of contract claim in the alternative against QF Holdings,[2] a negligent misrepresentation claim in the alternative against all defendants, and an unjust enrichment claim in the alternative against InSync and Qualifacts. Second Am. Compl. ¶¶ 42–78. The defendants now move to dismiss NorthStar's second amended complaint. *See* MTD I; MTD II.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678. (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]'

---

[2] The second amended complaint is unclear as to whether this claim is against QF Holdings alone (as the parenthetical in the complaint suggests) or against InSync too. *See* Second Am. Compl. ¶ 57 ("Plaintiff's Count III is presented in the alternative against Defendant InSync and Defendant Holdings in the event if Defendant Holdings is determined to be a successor in interest to Defendant InSync either together with or instead of Defendant LLC."); *id.* ¶ 60 ("Defendant InSync and Defendant Holdings breached multiple terms and conditions of the Contract, including express warranties of the Contract."). NorthStar's response to the defendants' motion indicates that the claim is against only QF Holdings. *See* Resp. to MTD II (Doc. 65) at 4.

devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When considering the motion, the complaint's factual allegations are accepted "as true" and construed "in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Consideration is limited "to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. at 544.

## III.    ANALYSIS

The defendants have filed two motions to dismiss. In the first, QF Holdings argues that the second amended complaint fails to state a claim for successor liability. *See generally* MTD I. Qualifacts joins these arguments. MTD II at 2. In the second, InSync and Qualifacts argue that NorthStar fails to plausibly allege any cause of

action. *See generally* MTD II. QF Holdings joins these arguments. MTD I at 2. I address these issues in the order they were raised in the motions to dismiss.

### A. Successor Liability

In Florida, a "corporation that acquires the assets of another business entity does not as a matter of law assume the liabilities of the prior business." *Corp. Exp. Off. Prods., Inc. v. Phillips*, 847 So. 2d 406, 412 (Fla. 2003). A successor is only "liable for the liabilities of a predecessor when: '(1) the successor expressly or impliedly assumes obligations of the predecessor, (2) the transaction is a de facto merger, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor.'" *Herman v. Lopez*, 401 So. 3d 382, 388–89 (Fla. 4th DCA 2025) (quoting *DFG Grp., LLC v. Stern*, 220 So. 3d 1236, 1238 (Fla. 4th DCA 2017)).

NorthStar alleges that the liabilities of InSync should be imposed on QF Holdings and Qualifacts because: (1) QF Holdings and Qualifacts "expressly or impliedly assumed the obligations of" InSync; (2) "the transaction constituted the de facto merger" of InSync into QF Holdings and Qualifacts; and (3) QF Holdings and Qualifacts are "mere continuations" of InSync. Second Am. Compl. ¶ 9.

7

QF Holdings and Qualifacts argue that NorthStar's allegations are conclusory and insufficient to state a claim for successor liability. MTD I at 6. But the motion to dismiss challenges the second amended complaint's sufficiency with respect to only two theories of successor liability: de facto merger and mere continuation. MTD I at 8–11. QF Holdings and Qualifacts do not argue that the second amended complaint fails to plausibly allege that QF Holdings and Qualifacts "expressly or impliedly assumed the obligations of" InSync. Second Am. Compl. ¶ 9; *see* Resp. to MTD I (Doc. 64) at 5 ("Defendant Holdings' Motion to Dismiss does not challenge the sufficiency of Plaintiff's allegation that Defendant Holdings expressly or impliedly assumed Defendant InSync's liabilities."). Because ordinarily a "district court may not dismiss an action for failure to state a claim based upon grounds not raised by the parties," *Mann v. Island Resorts Dev. Inc.*, No. 3:08CV297RSEMT, 2008 WL 5334248, at *3 (N.D. Fla. Dec. 19, 2008), the failure to challenge the third pleaded basis for successor liability means that the first motion to dismiss must be denied, *see Cuervo v. Airport Servs., Inc.*, 984 F. Supp. 2d 1333, 1340 (S.D. Fla.

2013) (noting that a plausible allegation of only one basis is "sufficient to allege a cause of action for successor liability").[3]

## B. Count V: Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must allege that (1) the "plaintiff has conferred a benefit on the defendant, who has knowledge thereof"; (2) the "defendant voluntarily accept[ed] and retain[ed] the benefit conferred"; and (3) "the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *CFLB P'ship, LLC v. Diamond Blue Int'l, Inc.*, 352 So. 3d 357, 359 (Fla. 3d DCA 2022) (quoting *Peoples Nat'l Bank of Com. v. First Union Nat'l Bank of Fla., N.A.*, 667 So. 2d 876, 879 (Fla. 3d DCA 1996) (per curiam)).

The Court dismissed the unjust enrichment claim against InSync and Qualifacts in NorthStar's first complaint because (1) NorthStar failed to plead the claim in the alternative to the breach of contract claim and (2) the parties agreed to the validity of the contract. *See* Order on MTD at 12–14; *see, e.g.*, *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) (per curiam) ("Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for

---

[3] As a result of this conclusion, I need not address NorthStar's Rule 12(g)(2) argument. *See* Resp. to MTD I at 3 n.2.

unjust enrichment if an express contract exists concerning the same subject matter.");

*Degutis v. Fin. Freedom, LLC*, 978 F. Supp. 2d 1243, 1265 (M.D. Fla. 2013) ("Unjust enrichment may only be pleaded in the alternative to a breach of contract claim where one of the parties asserts that the contract governing the dispute is invalid."). InSync and Qualifacts argue that I should dismiss the unjust enrichment claim in the second amended complaint for the same reasons. MTD II at 4–6.

I disagree. In the second amended complaint, NorthStar remedied both issues identified in the previous order. NorthStar pleads the unjust enrichment claim in the alternative and alleges that, because of the defendants' fraudulent inducement, NorthStar is "entitled to treat the Contract as void and/or rescinded." Second Am. Compl. ¶¶ 55, 72. Therefore, the defendants' motion to dismiss the unjust enrichment count is denied.

### C. Counts II & IV: Fraud in the Inducement and Negligent Misrepresentation

The defendants address Counts II and IV together in their motion to dismiss. *See* MTD II at 6–15. "The requirements for a claim of fraud or fraudulent inducement are: (1) a false statement regarding a material fact; (2) the statement maker's knowledge that the representation is false; (3) intent that the representation induces another's reliance; and (4) consequent injury to the party acting in reliance."

*Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1315 (11th Cir. 2007).[4] And to state a claim for negligent misrepresentation, a plaintiff must allege that:

> (1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely . . . on the misrepresentation; and (4) injury resulted in the plaintiff acting in justifiable reliance upon the misrepresentation.

*LoanFlight Lending, LLC v. Wood*, 388 So. 3d 1027, 1031 (Fla. 3d DCA 2024) (omission in the original) (quoting *Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 653 (Fla. 3d DCA 2006)).

---

[4] "It is unclear whether 'justifiable' reliance is required under Florida law." *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1195 n.20 (11th Cir. 2025). *Compare Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (per curiam) ("Justifiable reliance is not a necessary element of fraudulent misrepresentation."), *with Winfield Investments, LLC v. Pascal-Gaston Investments, LLC*, 254 So. 3d 589, 593 (Fla. 5th DCA 2018) (per curiam) (noting that "justifiable reliance . . . appeared to be an essential element under the holdings" of pre-*Butler* Florida Supreme Court precedent). This lack of clarity is compounded by disagreement concerning whether fraudulent misrepresentation and fraudulent inducement are the same claims. Some courts applying Florida law have said that the claims share the same elements. *See, e.g.*, *Dziegielewski v. Scalero*, 352 So. 3d 931, 934 (Fla. 5th DCA 2022); *Lorber v. Passick as Tr. of Sylvia Passick Revocable Tr.*, 327 So. 3d 297, 304 (Fla. 4th DCA 2021). Indeed, in *Butler*, the Florida Supreme Court referred interchangeably to fraudulent inducement and fraudulent misrepresentation. *See* 44 So. 3d at 104. Others have concluded that the two claims are different, with the difference being that fraudulent inducement requires a showing of justifiable reliance. *See, e.g.*, *Hardin v. Oakley Transp., Inc.*, No. 8:21-CV-2980-MSS-AEP, --- F. Supp. 3d ----, 2025 WL 948313, at *7 (M.D. Fla. Mar. 28, 2025); *Point Blank Sols., Inc. v. Toyobo Am., Inc.*, No. 09-61166-CIV, 2011 WL 13174652, at *4 n.8 (S.D. Fla. May 20, 2011); *see also Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 842 So. 2d 204, 209 (Fla. 3d DCA 2003). Regardless of which side of the debate is correct, even if fraudulent inducement includes as an element "justifiable reliance," the defendants' arguments do not provide a basis for dismissal of NorthStar's fraudulent inducement claim.

The defendants move to dismiss on three bases. First, the defendants argue that NorthStar's claims are legally barred because of provisions in their written agreement. MTD II at 6–9, 12–14. Second, the defendants argue that the alleged misrepresentations are not actionable because NorthStar failed to investigate the software before agreeing to the contract. *Id.* at 10. Third, the defendants argue that NorthStar insufficiently alleged reliance because NorthStar is a sophisticated party. *Id.* at 11. None of these arguments provide a reason for dismissal.

### 1. The Written Agreement Does Not Foreclose NorthStar's Claims

In making the first argument, the defendants rely on Florida caselaw holding that "[a] party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract." *Hillcrest Pac. Corp. v. Yamamura*, 727 So. 2d 1053, 1056 (Fla. 4th DCA 1999). The defendants point to two provisions in the contract. The first is an "as-is" clause in the Term Sheet:

> Please Note: By signing this document you are confirming that you are authorized to make commitments on behalf of the medical practice and affirm acceptance of the software 'as-is,' that the signor had satisfied themselves the software is suited for their intended purpose. If there are any exceptions they must be listed in the above comment section.

Term Sheet at 6. The second is part of a subsection of the "Warranties" provision of

the Terms and Conditions:

> THE PRACTICE ACKNOWLEDGES THAT IT HAS INDEPENDENTLY EVALUATED THE INSYNC HCS SYSTEM AND THE INSYNC HCS EMR/PM SERVICES AND THEIR APPLICATION TO MEET THE NEEDS OF THE PRACTICE AND THE NEEDS OF THE PROVIDER'S WITHIN THE PRACTICE. INSYNC HCS DISCLAIMS, AND THE PRACTICE HEREBY EXPRESSLY WAIVES, ALL OTHER REPRESENTATIONS, CONDITIONS, OR WARRANTIES, EXPRESS AND IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT, AND ANY CLAIMS ARISING FROM A COURSE OF DEALING OR USAGE OR TRADE.

Terms and Conditions § 14.4. The defendants argue that the alleged misrepresentations at the base of NorthStar's claims are "acknowledged and/or expressly waived by" these provisions. MTD II at 9.

Because the cited provisions do not specifically state that the written agreement will be "incontestable on account of fraud," *Oceanic Villas, Inc. v. Godson*, 4 So. 2d 689, 690 (Fla. 1941), the defendants' argument lacks merit under Florida Supreme Court precedent as interpreted by the Eleventh Circuit.[5] In *Global Quest, LLC v. Horizon Yachts, Inc.*, the parties' contract included both an as is clause and a warranty disclaimer. 849 F.3d 1022, 1025 (11th Cir. 2017). Based on these

---

[5] The Terms and Conditions contains a Florida choice of law clause. Terms and Conditions § 29.

provisions, along with recent Florida cases "stating that a party cannot recover in fraud for misrepresentations covered or expressly contradicted in a later written agreement," the district court granted summary judgment to the defendants on the plaintiff's fraudulent inducement claim. *Id.* at 1027. The Eleventh Circuit reversed, concluding that, based on *Oceanic Villas*, only a "specific disclaimer of liability for fraud," can suffice to bar a fraudulent inducement claim as a matter of law. *Id.* at 1028; *see NM Residential, LLC v. Prospect Park Dev., LLC*, 336 So. 3d 807, 812 (Fla. 2d DCA 2022) ("[U]ntil such time as the Florida Supreme Court decides to revisit its holding in *Oceanic Villas*, that binding precedent demands that something more is needed—a contractual 'recognition that fraud may have been committed and a stipulation that such fraud, if found to have been committed, should not vitiate the contract.' " (alterations adopted) (quoting *Oceanic Villas*, 4 So. 2d at 691)); *accord, e.g.*, *Lower Fees, Inc. v. Bankrate, Inc.*, 74 So. 3d 517, 519 (Fla. 4th DCA 2011).[6]

---

[6] Florida law is far from settled in this area. *See, e.g.*, *Billington v. Ginn–La Pine Island, Ltd., LLLP*, 192 So. 3d 77, 82 (Fla. 5th DCA 2016) ("*Oceanic Villas* has generated considerable confusion in the lower courts," in the light of other Florida Supreme Court precedent). For example, some cases distinguish "between fraudulent inducement claims seeking rescission and those seeking damages." *Levitan v. Dancaescu*, 347 So. 3d 485, 491 (Fla. 1st DCA 2022) (per curiam). Other cases do not employ this distinction. *See id.* ("[T]he Second District recently applied *Oceanic Villas* to a fraud claim which sought damages or, alternatively, rescission."). Regardless of this disagreement, the Eleventh Circuit has been clear and resolute in its application of *Oceanic Villas*. *See, e.g.*, *Glob. Quest*, 849 F.3d at 1027–29.

Such a disclaimer was lacking in *Global Quest*, and it is also lacking in the provisions that the defendants cite. Therefore, the two cited contractual provisions do not legally bar NorthStar's fraudulent inducement and negligent misrepresentation claims.[7]

The same conclusion follows regarding a third provision that the defendants cite later in their motion. *See* MTD II at 12–14. That provision provides that NorthStar "is not relying on any statements or representations concerning the INSYNC HCS Systems or the EMR/PM Services made to [NorthStar], other than those contained [in the Terms and Conditions] and in the written materials furnished to [NorthStar] by [InSync]." Terms and Conditions § 18.

In arguing that this provision provides cause for dismissal, the defendants rely in main on *Billington v. Ginn–La Pine Island, Ltd., LLLP*, where the Fifth District Court of Appeal held that the non-reliance clauses in that case "negate[d] a claim for fraud in the inducement because [the plaintiff] cannot recant his contractual

---

[7] The defendants do not present any reason to treat NorthStar's fraudulent inducement and negligent misrepresentation claims differently with respect to this argument. Negligent misrepresentation "sounds in fraud under Florida law," *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 951 (11th Cir. 2014), and other district courts have applied *Oceanic Villas*'s rule to negligent misrepresentation claims, *see, e.g.*, *Gonzalez v. Indep. Order of Foresters*, No. 22-CV-23513, 2023 WL 1796452, at *4 (S.D. Fla. Feb. 7, 2023); *Dental Fix Rx, LLC v. Moore*, No. 17-62218-CIV, 2020 WL 13420871, at *8 (S.D. Fla. Dec. 18, 2020).

promises that he did not rely upon extrinsic representations." 192 So. 3d 77, 84 (Fla. 5th DCA 2016).[8] But the provision at issue in *Billington* contained "an express waiver of the right to base a claim on pre-contract representations." *Id.* The reliance provision here does not include this express waiver. Further, to the extent *Billington* can be read to announce a rule beyond the contractual language at issue, that rule conflicts with *Global Quest. See* 849 F.3d at 1028 ("Nothing in *Oceanic Villas* suggests that the result would have been different with a warranty disclaimer, or any other contract provision save a specific disclaimer of liability for fraud."). Therefore, like the other provisions analyzed above, the reliance provision does not require dismissal of NorthStar's fraudulent inducement and negligent misrepresentation claims. *See, e.g., NM Residential, LLC*, 336 So. 3d at 83 (concluding that provisions, including "a disclaimer affirming that there were no representations of the seller on which the purchaser is relying" were insufficient to bar fraud claims); *Fong Kai Bus. Group Co., Ltd v. Shade Saver, Inc.*, No. 5:18-CV-540-OC-30PRL, 2019 WL 12304385, at *5 (M.D. Fla. Apr. 9, 2019) ("[T]he Court concludes there is no distinction between integration and non-reliance clauses when it comes to barring fraudulent

---

[8] The Fifth District certified six questions to the Florida Supreme Court, including: "Does a clear and unambiguous non-reliance clause negate a claim for fraud, where one party alleges justifiable reliance on an extrinsic representation?" *Billington*, 192 So. 3d at 85. The Florida Supreme Court did not take up any of the certified questions.

inducement claims—both are wholly insufficient, and only an explicit fraud waiver in a contract will bar a suit for fraud.").[9]

In conclusion, binding precedent forecloses the defendants' arguments. Although the cited contractual provisions "may constitute evidence against" NorthStar's allegations, they do not foreclose NorthStar's claims as a matter of law. *Glob. Quest*, 849 F.3d at 1028–29.

### 2. NorthStar's Alleged Lack of Due Diligence Does Not Require Dismissal

The defendants also rely on Florida cases providing that a "misrepresentation is not actionable where its truth might have been discovered by the exercise of ordinary diligence." *Sage v. Pahlavi*, 358 So. 3d 434, 437 (Fla. 4th DCA 2023) (quoting *Wasser v. Sasoni*, 652 So. 2d 411, 412 (Fla. 3d DCA 1995)). The defendants argue that NorthStar had the opportunity to independently evaluate the software but failed to exercise due diligence, and thus their claims are legally insufficient. MTD II at 10. But the cited cases, which concern real estate transactions, do not require dismissal of NorthStar's claims.

---

[9] Also, the reliance provision allows NorthStar to rely on statements and representations contained "in the written materials" that InSync furnished to NorthStar. Terms and Conditions § 18; *see* Resp. to MTD II at 12. NorthStar alleges that InSync made by email certain representations about their system, Second Am. Compl. ¶¶ 23–24, which could qualify under the Terms and Conditions as "written materials" that NorthStar could rely on.

17

"Florida law imposes no absolute duty to investigate" on a plaintiff bringing a claim for negligent misrepresentation. *AECOM Tech. Servs., Inc. v. Prof'l Servs. Indus., Inc.*, 580 F. Supp. 3d 1176, 1195 (M.D. Fla. 2021). Instead, a plaintiff must prove only that "he acted in 'justifiable reliance' on the negligent misrepresentation." *Id.* at 1195–96. And a plaintiff "might justifiably rely on a defendant's representation even if he was likewise negligent in not investigating the representation." *Id.* at 1196. NorthStar plausibly alleges justifiable reliance.

With respect to fraud claims, the Florida Supreme Court has concluded that a plaintiff does not need to allege that it "had investigated the truth of the misrepresentations." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (per curiam). Instead, the plaintiff "may rely on the truth of a representation," even though its falsity could have been ascertained" by an investigation, unless the plaintiff "knows the representation to be false or its falsity is obvious" to the plaintiff. *Id.* (quoting *Besett v. Basnett*, 389 So. 2d 995, 998 (Fla. 1980)). The defendants do not argue that NorthStar knew InSync's representations to be false or that the falsity of said representations were obvious.[10]

---

[10] Even if "justifiable" reliance is an element of fraudulent inducement, the defendants' argument fails for the same reason it fails with respect to the negligent misrepresentation claim.

For these reasons, this argument does not merit dismissal.

### 3. NorthStar's Alleged Sophistication Does Not Require Dismissal

The defendants argue that NorthStar fails to plausibly allege reliance because NorthStar is a sophisticated party. MTD II at 11. The defendants cite two cases in support of this argument. The first case concerned a motion for summary judgment and applied New York law. *See Infinite Energy Inc. v. Econnergy Energy Co., Inc.*, No. 1:06CV124-SPM/AK, 2010 WL 11518548, at *3 (N.D. Fla. Oct. 13, 2010). The second case, arising in the context of an allegedly misrepresentative property appraisal, applied Florida law to dismiss a negligent misrepresentation claim on the basis that "Florida Courts have found that when a defrauded party is sophisticated, the lack of justifiable reliance is especially compelling." *Trinidad & Tobago Unit Tr. Corp. v. CB Richard Ellis, Inc.*, 280 F.R.D. 676, 679 (S.D. Fla. 2012).

The defendants fail to convince that these cases warrant dismissal of NorthStar's claims. The question of justifiable reliance is ordinarily not ripe for adjudication at the motion-to-dismiss stage. *See, e.g., Brady v. Medtronic, Inc.*, No. 13-62199-CIV, 2015 WL 11181971, at *6 (S.D. Fla. Mar. 30, 2015); *Am. Infoage, LLC v. Regions Bank*, No. 8:13-CV-1533-T-23TGW, 2014 WL 1117050, at *1 (M.D. Fla. Mar. 20, 2014); *see also Hawaiian Airlines, Inc. v. AAR Aircraft Servs.,*

19

*Inc.*, 167 F. Supp. 3d 1311, 1321 (S.D. Fla. 2016) ("[T]he question of whether the plaintiff's reliance was justified is typically a question of fact."). Although circumstances exist in which, as a matter of law, a plaintiff's reliance is not justified, the defendants have failed to demonstrate, based on the allegations in the second amended complaint, that this is one such circumstance. *Cf. Mergens v. Dreyfoos*, 166 F.3d 1114, 1117–18 (11th Cir. 1999) (concluding no justified reliance when: (1) the plaintiffs "specified in the agreement that they were sophisticated sellers, represented by both legal counsel and certified public accountants"; (2) the parties "had been in an adversarial relationship since well before the execution" of the contract; and (3) the plaintiffs entered into the contract, "in part, to settle a lawsuit threatened by the [plaintiffs] that claimed fraud"). Accordingly, the defendants' argument does not present a basis for dismissal.

### D. Count I: Breach of Contract

To establish a claim for breach of contract, a plaintiff must establish "(1) a valid contract; (2) a material breach; and (3) damages." *Murciano v. Garcia*, 958 So. 2d 423, 423 (Fla. 3d DCA 2007) (per curiam). The defendants argue that NorthStar fails to plausibly allege breach because the "as-is" clause excludes all implied warranties, NorthStar should have discovered the alleged defects before

contracting, and, taking the second amended complaint on its own terms, InSync fulfilled the contractual obligation to use "reasonable efforts to attempt to timely correct the error or omission" InSync directly caused. MTD II at 15–18.

In their initial motion to dismiss, the defendants relied exclusively on their argument based on the "as-is" clause. (Doc. 22) at 8–10 ("[T]he allegations that alleged software functionality issues constitute a breach of contract are precluded by the 'as-is' provision."). The order on that motion concluded that this argument did not provide a reason for dismissal because NorthStar alleged a breach of express warranties and "InSync 'warrant[ed] that in the event of an error or omission caused directly by [InSync], [InSync] [would] use reasonable efforts to attempt to timely correct the error or omission.'" Order on MTD at 9 (alterations in the original) (quoting (Doc. 1-4) at 11)).

Even though the argument "was available" to the defendants at the time of their initial motion to dismiss, the defendants did not argue that NorthStar's allegation about InSync's breach of "express warranties" was insufficient. The defendants therefore cannot raise that argument now. *See* FED. R. CIV. P. 12(g)(2) (providing that, other than limited exceptions irrelevant here, "a party that makes a motion under [Rule 12] must not make another motion under [Rule 12] raising a

21

defense or objection that was available to the party but omitted from its earlier motion"); Resp. to MTD II (Doc. 65) at 15 (raising Rule 12(g)(2)); *Brooks v. Warden*, 706 F. App'x 965, 969 (11th Cir. 2017) ("The policy behind Rule 12(g) is to prevent piecemeal litigation in which a defendant moves to dismiss on one ground, loses, then files a second motion on another ground." (quoting *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012))). Accordingly, the defendants' motion to dismiss is denied with respect to the breach of contract claims.

## IV.    CONCLUSION

Accordingly, the following is ORDERED:

1.    The Motions to Dismiss (Docs. 60 & 61) are **DENIED**.

**ORDERED** in Tampa, Florida, on June 18, 2025.

Kathryn Kimball Mizelle
United States District Judge